No. 86-274

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

IN RE THE MARRIAGE OF
EMIL E. BAHM,

        Petitioner and Appellant,

   and

ARDYS J. BAHM,

        Respondent, Cross-Appellant
        and Respondent.

_____

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Whalen & Whalen; Michael J. Whalen, Billings, Montana

    For Respondent:

        Virginia A. Bryan, Billings, Montana

_____

Submitted on Briefs: Jan. 30, 1987

Decided:  February 13, 1987

Filed: FEB 13 1987

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Both parties appeal the April 3, 1986, order of the Thirteenth Judicial District Court. Petitioner Emil Bahm appeals the portion of the order requiring him to sell or convey title to property located in North Dakota. Respondent Ardys Bahm appeals the denial of attorneys' fees and finding by the court that the property settlement agreement contains no provision for maintenance. We affirm the April 3, 1986, order of the District Court and dismiss respondent's appeal as untimely.

A decree of dissolution was entered August 11, 1981, dissolving the parties' marriage. The decree incorporated a property settlement agreement executed by the parties. Ambiguities in the property settlement agreement caused the current dispute. The agreement provides that Ardys is to receive $175,000 for her interest in the parties' real and personal property. Such sum included $15,000 in cash at the time of entry of the decree of dissolution, $10,000 within the following year, and any amounts received for the sale of the parties' Morton County, North Dakota property. Upon default of the buyer, the property was to be resold as soon as possible. The $175,000 was to be paid by February 1, 1992, with no accrual of interest.

Paragraph (8) of the agreement provided for $500 monthly maintenance payments to Ardys to be credited against the $175,000 owed to her. The monthly payments were to terminate upon the happening of any of 3 contingencies: 1) Ardys' death; 2) Ardys' remarriage; 3) payment of the first $100,000 owed under the agreement or sale of the North Dakota property.

2

The buyer defaulted on the contract to purchase the North Dakota property and the property was never re-listed for sale. Emil terminated the $500 monthly maintenance payments to Ardys in February of 1985. Ardys obtained payment for March of 1985 by writ of execution. No maintenance payments have been made since that time.

On December 18, 1985, Ardys filed a motion to modify visitation and for contempt based upon Emil's refusal to pay maintenance. In addition, Ardys requested that the court order Emil to list the North Dakota property for sale or to quit claim his interest in the property to Ardys. The motions were argued before the court and briefed by the parties.

On April 3, 1986, the District Court entered its opinion and order denying the motions for contempt and modification of visitation, and requiring Emil to list the North Dakota property or in the alternative quit claim his interest to Ardys with the value of Emil's interest to be credited against the balance owed to Ardys. Each party was required to pay their own attorneys' fees.

Emil filed a notice of appeal May 5, 1986. Ardys did not file a notice of appeal until June 4, 1986. On the same date, the district judge heard oral argument by the parties on whether the 30 day time limit for appeal should be extended 30 days pursuant to Rule 5, Mont.R.Civ.P., to allow Ardys' appeal. By order dated June 10, 1986, the District Court granted Ardys' motion for extension of time. Emil has filed a motion with this Court to dismiss Ardys' appeal.

Before reaching the issue raised by Emil on appeal we address whether Ardys' appeal is properly before this Court. Rule 5, M.R.App.Civ.P. provides that the 30 day time limit for appealing from a judgment or an order may be extended by the district court for 30 days upon a showing of excusable neglect. The motion for extension may be filed before or

3

after expiration of the first 30 days. Zell v. Zell (1977), 172 Mont. 496, 565 P.2d 311. In the present case, Ardys timely moved for an extension of the 30 day limit. However, we find the District Court applied an improper standard in granting the extension and reverse the District Court order permitting Ardys' appeal.

The June 10, 1986, District Court order reads, "Upon Motion of the Respondent, Ardys J. Bahm, and good cause appearing therefore, IT IS HEREBY ORDERED that the Respondent be allowed to file her Notice of Appeal." The standard to be applied is excusable neglect rather than good cause. Rule 5, M.R.App.Civ.P. The hearing transcript reveals that Ardys' attorney originally determined not to file a notice of appeal then later changed her mind. The notice of appeal was not filed until the sixtieth day due to counsel's involvement in a campaign.

Neither counsel's busy schedule nor her change of mind concerning filing a notice of appeal constitute excusable neglect. In McCormick v. McCormick (1975), 168 Mont. 136, 541 P.2d 765, we held that appellant's change of mind about filing an appeal is not an extraordinary case for which an extension of time to file an appeal is allowed under Rule 5. It does not matter whether it is counsel or the client who experiences the change of mind concerning the appeal. See Gann v. Smith (CA 5th, 1971), 443 F.2d 352.

Excusable neglect is discussed in 9 Moore's Federal Practice ¶ 204.13[1-3] (2ded. 1985) It is widely held that counsel's busy schedule is not a basis for a finding of excusable neglect. See e.g. Pimero Schroeder v. Federal National Mortgage Association (CA 1st 1978), 574 F.2d 1117.

We find that the District Court erred in granting an extension of time allowing Ardys to file her appeal. We dismiss Ardys' appeal and proceed to consider the sole issue raised by Emil:

4

Whether the District Court improperly affected the title to real property located in North Dakota?

Emil contends that the District Court does not have the power to order him to sell the North Dakota property or in the alternative quitclaim his interest to Ardys. Emil contends that either method contemplates a transfer of real property in North Dakota by court order, thus the District Court is affecting title to property beyond its jurisdiction. We do not agree.

In Gammon v. Christiana, Inc. (Mont. 1984), 684 P.2d 1081, 41 St.Rep. 1161, an action was brought in Montana to enforce an Oregon divorce decree which awarded Montana property to the wife. This Court found that the Oregon court had jurisdiction over the parties and was empowered to determine the equities between the parties with respect to marital property. While the Oregon court did not have jurisdiction to directly affect title to Montana property, the decree granting an interest to the wife was entitled to full faith and credit in the Montana courts.

In the present case, the District Court ordered Emil to sell the North Dakota property or to quitclaim his interest to Ardys. The District Court did not directly affect title to property beyond its jurisdiction. The dissolution action gave the District Court the power to determine the equities between the parties including equities with respect to their real property. Further, the property settlement agreement between the parties, incorporated into the dissolution decree, required the North Dakota property to be resold as soon as possible upon default of the original buyer. Emil failed to abide by this provision and pursuant to Ardys' motion, the District Court is enforcing the decree. We find the order requiring Emil to sell the North Dakota property or to quitclaim his interest to Ardys was within the jurisdiction of the District Court.

The District Court order appealed from by Emil is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

6