No. 94-093

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

NORTHWEST TRUCK & TRAILER SALES,
INC., a Montana corporation,

     Plaintiff and Respondent,

  v.

ROGER W. DVORAK and
PATRICIA J. DVORAK,

     Defendants and Appellants.

FILED

DEC 29 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                 In and for the County of Yellowstone,
                 Honorable Maurice R. Colberg, Jr., Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

     Jack E. Sands, Billings, Montana

     For Respondent:

     James P. Murphy and Stewart R. Kirkpatrick,
     Murphy & Kirkpatrick, Billings, Montana

Submitted on Briefs:  November 23, 1994

Decided:  December 29, 1994

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

In this action, Northwest Truck & Trailer Sales, Inc. (Northwest), sought repossession of and the balance owing on a truck it sold to Roger W. and Patricia J. Dvorak. The Dvoraks counterclaimed, alleging fraud and breach of contract. The District Court for the Thirteenth Judicial District, Yellowstone County, entered summary judgment for Northwest on the Dvoraks' counterclaim of fraud. At trial on Northwest's claims and the remaining counterclaims, a jury found that Northwest did not breach its contract with the Dvoraks. The court directed a verdict awarding Northwest a deficiency judgment of $30,211.47, plus costs. The Dvoraks appeal. We affirm.

The issues are:

1. Did the District Court err in granting Northwest's motion for summary judgment on the counterclaim of fraud?

2. Did the court err in refusing to allow the Dvoraks' proposed evidence that the truck was not a new truck?

3. Did the court err in directing a verdict against the Dvoraks for $30,211.47?

4. Did the court err in refusing the Dvoraks' proposed jury instructions?

5. Do the jury's answers on the special verdict form require a reversal of their verdict because they are internally inconsistent?

In June 1987, the Dvoraks bought a 1987 Peterbilt tractor truck from Northwest to use in their two-person trucking business.

2

The $85,600 sale price of the truck was financed over a sixty-month term. In January 1990, Northwest filed a complaint in the District Court alleging that the Dvoraks had failed to make the required monthly payments on the truck. It asked to be restored to immediate possession of the vehicle and for damages, costs, and attorney fees.

The Dvoraks counterclaimed, alleging that Northwest falsely represented to them that the truck was new when they bought it. They provided affidavits in which their son-in-law and four other persons stated they had examined the truck and found signs that it was not in its original condition. The Dvoraks asserted that Northwest's misrepresentation constituted fraud and breach of contract. They asked for compensatory and punitive damages and for their attorney fees and costs.

In May 1990, following a hearing, the District Court ordered that the truck be delivered to Northwest. Roger Dvorak admitted to being at least eight payments in arrears at that time. Northwest resold the truck in September of 1990 for $58,000. The truck's odometer showed some 326,000 miles at that time.

In May 1991, the District Court granted partial summary judgment for Northwest on the Dvoraks' counterclaim alleging fraud and requesting punitive damages. The court ruled that the Dvoraks had failed to establish material issues of fact concerning necessary elements of their fraud claim.

The case proceeded to trial on Northwest's claim for a deficiency judgment and on the Dvoraks' counterclaims that

3

Northwest breached the implied covenant of good faith and fair dealing and otherwise breached the contract. In a special verdict, the jury found that the written contract between the parties had been altered by an oral agreement, but that Northwest had not breached the modified contract or breached the implied covenant of good faith and fair dealing therein. The jury further found that Northwest had breached the implied covenant in the original written contract, but that there were no damages from that breach. The court directed a verdict against the Dvoraks for the $30,211.47 deficiency proved by Northwest between the amount owing on the contract and the resale price of the truck. The Dvoraks appeal.

This Court has previously ruled that the Dvoraks' notice of appeal in this matter was timely filed. See Northwest Truck & Trailer Sales, Inc. v. Dvorak (Mont. 1994), 877 P.2d 31, 51 St.Rep. 564.

## Issue 1

Did the District Court err in granting Northwest's motion for summary judgment on the counterclaim of fraud?

A motion for summary judgment is properly granted if the record demonstrates no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. A party opposing a motion for summary judgment may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. Rule 56(e), M.R.Civ.P. This Court reviews a ruling on a motion for summary judgment under the same standard as that used

4

by the district court in its ruling on the motion. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214.

The nine elements of fraud are:

1. A representation;

2. Falsity of the representation;

3. Materiality of the representation;

4. The speaker's knowledge of the falsity of the representation or ignorance of its truth;

5. The speaker's intent that the representation shall be relied upon;

6. The hearer's ignorance of the falsity of the representation;

7. The hearer's reliance on the representation;

8. The hearer's right to rely upon the representation;

9. Consequent and proximate injury caused by the reliance on the representation.

Wiberg v. 17 Bar, Inc. (1990), 241 Mont. 490, 496, 788 P.2d 292, 295. The District Court ruled that the Dvoraks failed to establish elements 2, 5, 6, and 9.

The Dvoraks claim that contrary to the District Court's ruling, they produced evidence creating genuine issues of material fact concerning whether the truck was used and rebuilt before they bought it. They claimed damages because a rebuilt truck is worth less than a new one.

Attached to the Dvoraks' brief in opposition to Northwest's motion for claim and delivery were affidavits signed by the Dvoraks' son-in-law and four other individuals. The affidavits were identical and were all dated April 20, 1990. Attached to each

5

affidavit was a list of thirty-two observed defects in the Dvoraks' truck. Each affidavit stated:

> From my personal observations noted on Exhibit 1, it is my opinion that the truck either is not a factory-built new truck, or has had major components replaced and had repainting done to conceal the work done on the truck.

The affidavits were dated almost three years after the Dvoraks purchased the truck. At that time, the Dvoraks had driven the truck over 300,000 miles. The affidavits do not state when the observations about the truck were made. They state no opinion as to who created the alleged defects in the truck or when they were created. Moreover, the affidavits do not demonstrate that Northwest knew or should have known of the claimed defects in the truck.

The Dvoraks essentially argue that "because we did not tamper with the truck, Northwest must have." However, this general assertion does not satisfy the Dvoraks' obligation to prove their claim of fraud with particularity. See Rule 9(b), M.R.Civ.P. We conclude that the District Court did not err in ruling that the Dvoraks failed to establish element 2 of their claim of fraud.

The District Court observed as to the sixth element of the fraud claim that, within a few days after he bought the truck, Roger Dvorak had it inspected by a qualified person engaged in the truck repair business. That person stated by deposition that he did not note the defects listed in the above-mentioned affidavits.

As to the ninth element of fraud, damages, Northwest cited Roger Dvorak's deposition testimony that the truck ran okay and he had been satisfied with its condition. The Dvoraks, in rebuttal,

6

maintained "it is common knowledge that trucks which have been wrecked and rebuilt are worth far less than those which have not." However, they offered no specific proof of their damages to support this allegation. An April 29, 1991 affidavit of the Dvoraks' son-in-law, to which they refer in their briefs on appeal, does not appear in the record nor is it listed on the court's docket. We conclude that the court did not err in ruling that the Dvoraks failed to present a genuine issue of material fact as to the ninth element of their claim of fraud.

We hold that the District Court did not err in granting Northwest summary judgment on the counterclaim of fraud.

## Issue 2

Did the court err in refusing to allow the Dvoraks' proposed evidence that the truck was not a new truck?

In its memorandum accompanying the order granting partial summary judgment for Northwest, the District Court stated:

> In addition, there being no substantial evidence to establish that the plaintiff did not sell the defendants a new truck, no evidence on this issue of the alleged breach of the contract by the plaintiff will be permitted at the trial.

The Dvoraks argue that this was error because it precluded a contract claim for the difference between the contract price and the value of a used/wrecked truck. The Dvoraks maintain that the ruling "had additional far-reaching consequences for the remaining portion of the Dvoraks' counterclaims which eventually went to the jury--i.e., breach of contract, breach of the covenant of good faith and fair dealing, and odometer tampering."

7

Under any counterclaim based on the alleged used condition of the truck, the Dvoraks would be obliged to prove damages therefrom. As discussed above in regard to the motion for summary judgment, they failed to provide evidence of any damages resulting from their claim that the truck was not new when they bought it. Moreover, Northwest produced evidence at trial that the resale price of the truck was above the average price for a truck with that many miles on it.

The Dvoraks were allowed to try to the jury their counter-claims concerning warranties, modification to and breach of contract, and odometer tampering. We hold that the District Court did not err in refusing to allow evidence at trial that the truck was not new when the Dvoraks bought it.

Issue 3

Did the court err in directing a verdict against the Dvoraks for $30,211.47?

The Dvoraks contend no deficiency judgment should have been granted because the sale was not done in a commercially reasonable manner for the following reasons: (1) the repossession affidavit signed by the bank officer was false; and (2) Northwest improperly refused to credit the Dvoraks with credit life and credit disabili-ty insurance refunds which Northwest got back when it foreclosed and cancelled the Dvoraks' insurance. The Dvoraks maintain that commercial reasonableness is a question of fact for the jury.

The Dvoraks have not demonstrated any way in which the bank's affidavit changed the amount of money received from the sale or

8

credited to the Dvoraks. Also, the evidence showed that the Dvoraks' maintenance account on the truck was credited with the insurance refund.

During the presentation of Northwest's deficiency case at trial, the Dvoraks stipulated that they received notice of the sale and that Northwest obtained a commercially reasonable price for its resale of the truck. The Dvoraks did not raise an issue at trial as to the time, place, or advertising of the sale of their truck. This Court generally will not review issues raised for the first time on appeal. Weinberg v. Farmers State Bank of Worden (1988), 231 Mont. 10, 19, 752 P.2d 719, 724. We therefore affirm the District Court's directed verdict against the Dvoraks for $30,211.47.

## Issue 4

Did the court err in refusing the Dvoraks' proposed jury instructions?

The standard of review for a trial court's refusal to give jury instructions is whether the trial court abused its discretion. Hislop v. Cady (1993), 261 Mont. 243, 247, 862 P.2d 388, 390. A court may refuse instructions when the facts proven at trial do not show a basis for the instructions requested. Bushnell v. Cook (1986), 221 Mont. 296, 300, 718 P.2d 665, 668.

Two sets of proposed instructions are at issue. One set would have instructed the jury on the Uniform Commercial Code (UCC) measure of damages. The other set would have instructed on the

9

Dvoraks' claims that Northwest had improperly sold insurance in violation of Montana's laws.

The rights of and remedies for a buyer claiming breach in a sale of goods under the UCC are listed at §§ 30-2-601 and -711, MCA. In this case, the evidence showed that the Dvoraks did not reject the truck upon delivery, as described under § 30-2-602, MCA. Absent rejection of nonconforming goods, the UCC requires notice to the seller within a reasonable time. See § 30-2-607, MCA. The evidence also showed that the Dvoraks failed to notify Northwest of the alleged nonconformity of the truck until after Northwest filed suit to recover the truck, when they filed their counterclaims. It does not appear therefore that the Dvoraks were entitled to any damages under the UCC.

The second set of offered instructions concerned the unlawful sale of insurance by Northwest. This related to a policy of insurance on Roger Dvorak's life which the Dvoraks purchased when they entered the financing agreement. The Dvoraks failed to introduce any evidence at trial to show who sold the insurance or who received the commissions, or that Northwest received any commission.

Because the facts proven at trial did not show a basis for the above jury instructions offered by the Dvoraks, we hold that the District Court did not abuse its discretion in refusing them.

## Issue 5

Do the jury's answers on the special verdict form require a reversal of their verdict because they are internally inconsistent?

The jury answered "no" to question no. 2 on the special verdict form, whether Northwest breached the modified contract or breached the covenant of good faith and fair dealing implied by law in the modified contract. In question no. 4, the jury answered "yes" to the question of whether Northwest breached the implied covenant of good faith and fair dealing in the written contract between Northwest and the Dvoraks. The Dvoraks maintain that this is inconsistent.

At trial, the Dvoraks introduced evidence that the written financing agreement was altered to allow them to make late payment. The jury accepted this argument, because it found in question no. 1 that the contract was modified. In answer to question no. 2, however, the jury found that the modified contract was not breached.

The Dvoraks also introduced evidence at trial that Northwest breached, in other ways, the covenant of good faith and fair dealing implied in the written contract. The jury found that this covenant was breached, but found no damages from this breach.

The Dvoraks' counterclaims included several separate theories. We hold that the Dvoraks have shown no inconsistency in the jury's verdict which warrants reversal.

We affirm the judgment of the District Court.

_____
                     Chief Justice

We concur:

_____
John Conway Harrison

_____
Karla M. Gray

_____

_____

_____

_____
Justices

12

Justice Terry N. Trieweiler dissenting.

I dissent from the majority's conclusion that the District Court correctly dismissed the Dvoraks' counterclaim for punitive damages based on fraud.

Pursuant to Rule 56, M.R.Civ.P., summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In deciding whether there is an issue of fact, the party opposed to summary judgment is entitled to all reasonable inferences which may be drawn from the offered proof. *Brown v. Merrill Lynch* (1982), 197 Mont. 1, 9, 640 P.2d 453, 457; *Reaves v. Reinbold* (1980), 189 Mont. 284, 287, 615 P.2d 896, 898. Any doubt is to be resolved in favor of the party opposing summary judgment. *Reagan v. Union Oil Co.* (1984), 208 Mont. 1, 7, 675 P.2d 953, 956.

I conclude that the affidavits attached to the Dvoraks' memorandum in opposition to Northwest's motion for summary judgment were sufficient to raise factual issues regarding the Dvoraks' claim that they were induced to purchase a truck from Northwest by fraudulent representations.

For example, Robert G. Wittman operates a service shop where trucks are rebuilt and serviced, and where body work is performed. He inspected the truck purchased by the Dvoraks and swore in his affidavit that the truck had, at some time, sustained damage to its body, the engine had been in another truck, and numerous parts were not installed at the factory. The affiant also stated that the

13

truck had been painted somewhere other than at the factory and that the new paint did not match the factory paint. In fact, there was evidence that the entire cab had been removed and substantial work done on the truck.

The Dvoraks testified that none of the work described in Wittman's affidavit was done while they owned and operated the truck, and that no one else had possession of the truck for a sufficient period of time within which to perform such extensive work after its purchase.

Northwest represented to Dvoraks that the truck it sold them was new. The affidavits offered evidence that it was not new. Obviously, the dealer's representation was material to the Dvoraks' decision to purchase the truck.

Knowledge of the speaker's falsity can never be proven directly unless the speaker admits that he lied. Therefore, to prove fraud, knowledge must normally be inferred based on all of the circumstances. In this case, the truck in question was delivered to Northwest in December 1986 and was in its possession until sold to Dvoraks on June 1, 1987. The truck was presumably inspected by Northwest after delivery from the factory and prior to resale. If the conditions which were noted by those persons who filed affidavits in support of Dvoraks' claim were present prior to sale, it can be inferred that they were equally apparent to the qualified service people working for Northwest.

Likewise, it can be inferred that when a purchaser comes into a new car or truck dealership, the dealer intends that person to

14

rely on his or her representations that the vehicle being sold is new, as opposed to used. Finally, it can be inferred that when a purchaser pays the price appropriate for a new vehicle, as opposed to a discounted price for a used or damaged vehicle, that purchaser relied on representations by the dealer that the vehicle was new.

It was not necessary in order for the Dvoraks to prevail on their claim for fraud that they prove appreciable out-of-pocket loss. Section 27-1-204, MCA, provides that "[w]hen breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages." Furthermore, § 27-1-221, MCA, provides that "reasonable punitive damages may be awarded when the defendant has been found guilty of actual fraud . . . ."

In *Lauman v. Lee* (1981), 192 Mont. 84, 89, 626 P.2d 830, 833, we held that nominal damage may serve as the basis for a punitive damage award, even where the amount of actual damage is elusive. Certainly, in this case, if the Dvoraks purchased a used and repaired truck for the price of a new truck, they received less than they bargained for at the time of sale, even though over the long term, their use of the truck was not adversely affected. As pointed out in *Lauman*, where some actual damage can be presumed, based on the breach of a legal duty, punitive damages may be awarded even where the finder of fact assigns no value to the actual damages sustained.

For these reasons, I would reverse the District Court's dismissal of the Dvoraks' claim based on fraud, and remand this

15

case to the District Court for retrial of all issues, including the claims of fraud and breach of contract. Based on this conclusion, I would not address the remaining issues discussed in the majority opinion.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

_____
Justice

16

December 29, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Jack E. Sands
Attorney at Law
100 North 27th St., #250
Billings, MT 59101

James P. Murphy & Stewart R. Kirkpatrick
MURPHY & KIRKPATRICK
2929 Third Avenue North
Billings, MT 59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _Ed Gallagher_
Deputy